# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| JAMES COUNTRYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:11-CV-136 |
| | ) | |
| COMMUNITY LINK FEDERAL | ) | |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion to Partially Quash Plaintiff's Subpoena to the Indiana Credit Union League, a third party. (Docket # 18.) The motion has been fully briefed and is now ripe for ruling. For the reasons provided below, the Defendant's motion to partially quash will be GRANTED IN PART and DENIED IN PART.

### II. FACTUAL BACKGROUND

This case arises out of Plaintiff James Countryman's employment with, and subsequent termination from, Defendant Community Link Federal Credit Union ("CLFCU"). CLFCU hired Countryman as Manager and Chief Executive Officer in April 1999. (Compl. ¶ 7.) One of Countryman's responsibilities was reviewing CLFCU's compliance with the Rules and Regulations of the National Credit Union Association ("NCUA"). (Compl. ¶ 9.)

In October 2006, Countryman informed CLFCU's Board Chairman that the NCUA was going to conduct its first formal examination of CLFCU, and that, upon a thorough examination, CLFCU had potential for problems. (Compl. ¶ 12.) In May 2007, Countryman complained to

1

the NCUA about practices at CLFCU he believed were illegal or improper and subsequently provided information to the NCUA's examiner regarding CLFCU's alleged improprieties. (Compl. ¶ 14.) The NCUA created a Record of Action for CLFCU, which it was required to implement by February 2008. (Compl. ¶ 16.) Countryman maintains that he reminded CLFCU of this deadline on numerous occasions, but that CLFCU failed to implement the Record of Action by February 2008 and still had not implemented it by April 30, 2009. (Compl. ¶¶ 16-18.)

Before the NCUA's annual exam of CLFCU in June 2009, Countryman alleges that he informed CLFCU that he would not provide inaccurate or untruthful information to the NCUA and that he would tell the examiner that CLFCU had not implemented the Record of Action. (Compl. ¶¶ 19-20.) On May 1, 2009, CLFCU terminated Countryman. (Compl. ¶ 21.)

Countryman filed his Complaint on April 25, 2011, alleging that CLFCU discharged him in retaliation for agreeing to provide information to the NCUA, in violation of both the Federal Credit Union Act § 213 and public policy. (Compl. ¶¶ 22, 26.) Countryman seeks, among other relief, all wages, benefits, and other monetary loss suffered as a result of CLFCU's actions, punitive damages, and past and lost future income.

### III. PROCEDURAL BACKGROUND

On February 3, 2012, Countryman served a subpoena on the Indiana Credit Union League ("ICUL"), a third party, requesting any and all files concerning CLFCU, from April 1, 1999 through the present, including "any and all documents, electronically stored information, objects, financial analysis or plan, communications, discussions, meetings, board meeting minutes, operational and financial audits, compliance and/or noncompliance with National Credit Union Administration Rules and Regulations, formal and/or informal examination,

2

unacceptable activities and conflicts, reports from and/or communications with James Countryman, and/or any other credit union regulations, CAMEL ratings, documents of resolution, letters of understanding, or records of action . . . ." (Def.'s Br. in Supp. of Its Mot. to Partially Quash Pl.'s Subpoena to the ICUL ("Def.'s Br. in Supp.") 1-2, Ex. A.) After three unsuccessful attempts to informally confer with Plaintiff's counsel (*see* Def.'s Br. in Supp. 2, Exs. B, C, D), CLFCU filed a motion to partially quash Countryman's subpoena to ICUL (Docket # 18). While CLFCU does not object to the subpoena to the extent it seeks documents created while it employed Countryman, it objects to the production of documents created after Countryman was terminated and asks the Court to modify the subpoena to allow the production of only documents created prior to May 1, 2009. (Def.'s Br. in Supp. 1.)

Specifically, CLFCU argues that all documents created after Countryman's May 1, 2009, termination are irrelevant to his claims and that Countryman's subpoena seeks confidential financial documents that would cause it irreparable, competitive harm if disclosed to Countryman. (Def.'s Br. in Supp. 3-5.) Countryman responds by simply asserting, without explanation, that the documents created after his termination are relevant both to his claims and his request for punitive damages and that CLFCU has not shown that the financial documents sought in his subpoena are confidential. (Pl.'s Resp. 4-7.) In reply, CLFCU contends that the issues Countryman identified in his response involve documents that would have been exchanged between CLFCU and the NCUA, not between CLFCU and the ICUL, and that, as such, these documents are more easily obtained from either CLFCU or the NCUA. (Def.'s Reply 1.) Moreover, CLFCU asserts that the financial information Countryman seeks has no bearing on his claim for punitive damages. (Def.'s Reply 1.)

## IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to produce documents and other tangible things in the custody or control of a person. *Richter v. Mut. of Omaha Ins. Co.*, No. 06-Misc.-011, 2006 WL 1277906, at *2 (E.D. Wis. May 5, 2006); *see* Fed. R. Civ. P. 45(a).  Under Rule 45, a court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, if no exception or waiver applies, or if it subjects a person to undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).  Furthermore, a court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i), or "requires disclosure of a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(c)(3)(B)(i).

The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002); *see Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 cv 3, 2012 WL 776694, at *3 (N.D. Ind. Mar. 7, 2012) ("[T]he party seeking to quash a subpoena under Rule 45(c)(3)(A) has the burden of demonstrating that the information sought is privileged or subjects a person to an undue burden." (citation omitted)); *Pettit v. City of Columbus*, No. 104CV1464JDTTAB, 2005 WL 2218373, at *1 (S.D. Ind. Sept. 9, 2005); *Jones v. Hirschfield*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant."); *Wahuchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D. Ind. 1991).  As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *Sullivan v. Gurtner Plumbing, Inc.*, No. 11-

cv-6261, 2012 WL 896159, at *1 (N.D. Ill. Mar. 13, 2012) (citing *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)).

## V. DISCUSSION

### *A. Standing*

Although Countryman does not raise the issue, the Court will briefly address CLFCU's standing to quash a subpoena to ICUL, a third party to this action. While, as a general rule, only the person to whom a subpoena is directed may move to quash it, a party can object to a subpoena directed at a non-party by asserting a personal right or privilege regarding the documents sought. *Brady v. Cent. Ind. Reg'l Blood Ctr. Inc.*, No. 1:99-MC-19, 1999 WL 33912610, at *1 (N.D. Ind. Oct. 6, 1999) (citations omitted); *see Teton Homes Europe v. Forks RV*, No. 1:10-cv-33, 2010 WL 3715566, at *1 n.3 (N.D. Ind. Sept. 14, 2010); *Chaikin v. Fid. & Guar. Life Ins. Co.*, No. 02 c 6596, 2003 WL 22715826, at *1 (N.D. Ill. Nov. 17, 2003); *see also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."); *see generally Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *1 (S.D. Ind. Jan. 21, 1999) (noting that discovery may impinge upon legitimate privacy interests without threatening the narrow areas of information and communication protected by legal privileges).

Businesses have a legitimate interest in the privacy of their financial information that can confer standing to challenge a subpoena to a third party to produce that information. *Iantosca v. Benistar Admin. Servs., Inc.*, No. 1:11-mc-066-RLY-DML, 2011 WL 3155649, at *2 (S.D. Ind. July 26, 2011); *see Microsoft Corp. v. Tech. Enterprices, LLC*, No. 1:07-mc-210-DFH-TAB,

2008 WL 424613, at *1 (S.D. Ind. Feb. 13, 2008) (finding that the defendant company had standing to move to quash a subpoena to a third party bank for documents relating to its bank account). Here, as Countryman seeks financial information about CLFCU that the ICUL has in its possession, CLFCU has a legitimate privacy interest in that information sufficient to confer standing to move to quash the subpoena to the ICUL. *See Iantosca*, 2011 WL 3155649, at *2; *Microsoft Corp.*, 2008 WL 424613, at *1.

    *B. Post-May 1, 2009, Documents Relating to the Record of Action and Annual Exam*

CLFCU first objects to the subpoena to the ICUL—to the extent that it seeks documents created after Countryman's May 1, 2009, termination—on the ground that such documents are irrelevant to his claims. The scope of material that is obtainable through a Rule 45 subpoena is as broad as that which is otherwise permitted under the discovery rules. *Graham*, 206 F.R.D. at 253-254. Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in

favor of broad disclosure." *Chavez*, 206 F.R.D. at 619. To meet this burden, the resisting party must "specifically detail the reasons why each [request] is irrelevant." *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990); *see Illiana Surgery & Med. Ctr. LLC*, 2012 WL 776694, at *3.

Here, while Countryman's subpoena encompasses a broad range of documents pertaining to CLFCU, his response to CLFCU's motion to quash limits the breadth of the subpoena. He argues that all of the ICUL's documents relating to the February 2008 Record of Action, the NCUA's 2009 annual examination of CLFCU, and CLFCU's finances, including those created after May 1, 2009, are relevant and discoverable. (Pl.'s Resp. in Opp'n 4-6.) As enunciated by Countryman, these issues are much narrower than what the subpoena demands—"any and all files concerning Community Link Federal Credit Union (from April 1, 1999 through the present)" (Def.'s Br. in Supp. Ex. A). Therefore, by Countryman's own statements, the subpoena as it stands today is overly broad and should be partially quashed and modified. Nevertheless, as CLFCU does not challenge the subpoena to the extent it seeks documents created between April 1, 1999, and May 1, 2009, the subpoena will only be modified in regards to the post-May 1, 2009, documents it seeks.

In his response, Countryman simply states that the ICUL's post-May 1, 2009, documents relating to the February 2008 Record of Action, the NCUA's 2009 annual examination of CLFCU, and CLFCU's finances are relevant, without arguing *how* they are relevant. Nonetheless, CLFCU, as the party moving to quash the subpoena, bears the burden of showing that the discovery sought is irrelevant. *E.g.*, *Graham*, 206 F.R.D. at 254. Considering the broad scope of discovery, the categories of documents that Countryman lays out in his response appear

7

relevant, or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

For instance, documents relating to the February 2008 Record of Action that were created after May 1, 2009, could reveal whether CLFCU was able to implement the Record of Action prior to the annual review in June 2009. If CLFCU was able to implement the Record of Action before its review, then it would be less likely that they fired Countryman because he was going to inform the NCUA examiner that CLFCU had not implemented the Record of Action. On the other hand, if CLFCU did not implement the plan, then it would lend credence to Countryman's theory of illegal and retaliatory termination. By that same token, whether CLFCU received additional time to implement the Record of Action because of the termination of its CEO, Countryman, is relevant because, if CLFCU was given more time, then that could have been one of its motives to terminate Countryman.

Likewise, documents relating to the NCUA's 2009 annual examination of CLFCU created after May 1, 2009, could be relevant to Countryman's claims. For example, if CLFCU's 2009 annual exam was postponed because Countryman was terminated, thereby giving CLFCU more time to implement the Record of Action or otherwise bring itself in compliance with NCUA regulations, then this could have played a part in CLFCU's decision to terminate Countryman. Countryman's other assertions of the relevancy of the post-May 1, 2009, documents concerning the February 2008 Record of Action and the June 2009 NCUA annual exam could also be explicated in a similar fashion to demonstrate how these documents are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Nevertheless, while these documents may be relevant, the Court is permitted to quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Here, as CLFCU argues, the issues that Countryman identifies in his response relate only to communications and dealings between the NCUA and CLFCU. Countryman provides no explanation for why such communications could not be obtained from either CLFCU, an actual party to this action, or the NCUA, who has already been subpoenaed for this exact same information. (*See* Def.'s Reply 3 n.1, Ex. A.) "A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents." *Arthrex, Inc. v. Parcus Med., LLC*, No. 1:11-mc-00107-SEB-DML, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011); *see Morrow v. Air Ride Technologies, Inc.*, No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006) (requiring party to show that it could not obtain documents from its adversary before permitting the party to burden a non-party to produce the same documents); *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-10 (S.D. Cal. 1963) (non-parties to the action "should not be burdened with the annoyance and expense of producing the documents sought unless the plaintiff is unable to discover them from the defendant").

Therefore, as Countryman has not shown that he was unable to obtain the post-May 1, 2009, documents pertaining to the February 2008 Record of Action or the June 2009 NCUA annual exam from CLFCU, the defendant in this case, he will not be permitted to burden the ICUL, a non-party, with production of these same documents—particularly if, as CLFCU alleges, nothing in the information or documents already exchanged indicates that any

9

information regarding the NCUA passed between CLFCU and the ICUL (Def.'s Reply 2).
Furthermore, as Countryman has already requested the same information and documents from
the NCUA directly (*see* Def.'s Reply 3 n.1, Ex. A), seeking this same information from the
ICUL would be duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

*C. ICUL's Post-May 1, 2009 Documents Relating to CLFCU's Finances*

The part of Countryman's subpoena seeking post-May 1, 2009, documents relating to
CLFCU's finances, however, warrants a different conclusion. CLFCU argues that its financial
information from May 1, 2009, through the present is irrelevant, as only its current financial
status can be considered for punitive damages, and confidential. (Def.'s Reply 3-4.) It further
contends that if its post-May 1, 2009, financial information was disclosed to Countryman, who is
currently seeking employment with its competitors, such disclosure would cause it irreparable,
competitive harm. (Def.'s Br. in Supp. 5.)

Undoubtedly, "[a] defendant's financial condition is relevant to the pursuit of punitive
damages." *United States v. Autumn Ridge Condo. Ass'n, Inc.*, No. 2:08-CV-208-PPS-PRC, 2009
WL 3586957, at *2 (N.D. Ind. Oct. 27, 2009) (quoting *Platcher v. Health Prof'ls, Ltd.*, No. 04-
1442, 2007 WL 2772855, at *2 (C.D. Ill. Sept. 18, 2007)). Moreover, "most courts 'do not
require a prima facie showing of merit on a claim for punitive damages before permitting
discovery of a defendant's financial net worth.'" *Id.* (quoting *Platcher*, 2007 WL 2772855, at
*3). At the same time, however, only a defendant's current financial status is relevant to the
issue of punitive damages. *Id.*

In determining what constitutes "current" financial status, one court in the Seventh
Circuit has determined that a request for financial records over the past three years was overly

10

broad, *see Platcher*, 2007 WL 2772855, at *3, and several district courts outside this circuit have concluded that a defendant's net worth could be established with financial records over approximately the past two years, *see E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) (permitting disclosure of financial statements from 2007 and 2008, and any information available through 2009); *S. Cal. Hous. Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006) (limiting discovery of financial documents to time period of 2004 through mid-2006); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (limiting discovery of financial documents to period of 2003 through mid-2005). Drawing on these cases, one court in this district limited the discovery of all the requested financial information to a period of January 1, 2007, to the present (which, as of the date of the opinion, was October 27, 2009). *Autumn Ridge Condo. Ass'n, Inc.*, 2009 WL 3586957, at *3. Therefore, an appropriate time period appears to be approximately thirty months.

Here, the contested time period is from May 1, 2009, to the present, April 2012. While this is rapidly approaching the three year mark, it is not an unreasonably long or overly broad period of time to consider in order to understand and gauge CLFCU's current financial status. As such, the subpoena will not be modified as it pertains to CLFCU's post-May 1, 2009, financial records that the ICUL has in its possession.

While the parties dispute whether the financial information and documents sought by Countryman's subpoena are confidential, even assuming they are confidential, the subpoena will not be modified to exclude any documents relating to CLFCU's financial status created after May 1, 2009, as there is already a protective order in place covering such information. (*See* Docket # 21-1.) In the protective order, the parties define "confidential" material to include

11

"non-public business records the disclosure of which would result in competitive or economic harm to defendant or invade the privacy of individuals" and "any non-public financial information about CLFCU and related board and committee members." (Agreed Protective Order ¶¶ 7(a)-(b).) Any financial information about CLFCU that the ICUL produces in response to the subpoena would certainly fall under the scope of this protective order.

     Nonetheless, CLFCU argues that the harm caused by the disclosure of this information cannot be avoided by a protective order because the harm lies in the disclosure to Countryman, who, CLFCU alleges, is currently seeking employment with its competitors and, if permitted to review this information, could take it with him to his future employment. (Def.'s Br. in Supp. 5.) The terms of the Agreed Protective Order, however, address such a possibility. Paragraph 11 specifically states that "[d]ocuments and information designated confidential in accordance with this Order will be used *solely for the purpose of this action or appeal*." (Agreed Protective Order ¶ 11 (emphasis added).) This Court approved and adopted the Agreed Protective Order (Docket # 22), and the Court will not presume that any party to the case will violate its terms, which have been made an order of this Court. *See Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *4 (N.D. Ill. June 1, 2010) (noting that there was no appreciable risk of disclosure of sensitive competitive information, "especially in light of the fact that the persons would be subject to the court's protective order and its non-disclosure/non-use restrictions"); *see generally JAB Distribs., LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 WL 4008193, at *3 (N.D. Ill. Oct. 13, 2010) ("A party cannot simply assert—without any support—that the pertinent protective order displays a systemic weakness that renders its prophylactic powers inefficacious. Were it otherwise, a litigant could wholly frustrate the process of discovery that is

fundamental to the litigation system.").

## VI. CONCLUSION

In his response, Countryman essentially limited his subpoena to seeking only three categories of documents created after May 1, 2009: (1) those relating to the February 2008 Record of Action; (2) those relating to the NCUA's 2009 annual exam of CLFCU; and (3) those relating to CLFCU's finances. Accordingly, to the extent that Countryman's subpoena seeks ICUL's documents created after May 1, 2009, relating to the February 2008 Record of Action and the NCUA's 2009 annual exam of CLFCU, the Defendant's motion to partially quash is GRANTED as to these post-May 1, 2009, documents, as Countryman must first attempt to discover any post-May 1, 2009, documents relating to these issues from CLFCU itself or from the NCUA, which he has already subpoenaed for such documents. On the other hand, the part of Defendant's motion seeking to quash production of post-May 1, 2009, documents relating to CLFCU's finances is DENIED because such documents are relevant to Countryman's punitive damages claim and the response would be in accordance with the protective order currently in place. Therefore, Defendant's Motion to Partially Quash (Docket # 18) is GRANTED IN PART and DENIED IN PART as set out above.

SO ORDERED.

Enter for this 3rd day of April, 2012.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge